**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JANET ROBINSON** | **CIVIL ACTION** |
| **VERSUS** | **NO.  12-351** |
| **ST. TAMMANY PARISH PUBLIC SCHOOL SYSTEM, ET AL** | **SECTION: "G"(2)** |

**ORDER AND REASONS**

This case is about whether a school system unconstitutionally and tortiously adjudicated allegations that one of its students misbehaved during a field trip. Before the Court is a Motion for Summary Judgment[1] filed by Defendants St. Tammany Parish School Board (the "Board") and Kevin Darouse ("Darouse"). Defendants seek dismissal of all claims brought by Plaintiffs Janet Robinson ("Robinson") and her daughter, A.R. The Court has reviewed the parties' filings, the record, and the applicable law. For the reasons that follow, the Court will grant the motion and dismiss Plaintiffs' claims.

**I. Background**

*A. Factual Background*[2]

Plaintiff Janet Robinson is the mother of A.R., who was a minor during the time at issue in the case. On January 28, 2011, A.R. was one of several students who rode a St. Tammany Parish school bus on a field trip.[3] Other students accused A.R. of engaging in sexual misconduct on the bus,

---

[1]  Rec. Doc. 32.

[2]  The following facts are undisputed. Moreover, as discussed more fully below, Plaintiffs have failed to provide a statement of disputed facts as required by Local Rule 56.2, and the Court therefore must take Defendants' statement of undisputed facts as true for the purposes of this motion.

[3]  Rec. Doc. 32-2 at ¶¶ 4, 17.

and the school investigated these allegations.[4]

Defendant Kevin Darouse served as the Board's supervisor of administration, which among other things means that he investigates allegations of student misconduct and makes determinations as to the student's culpability.[5] Darouse thus acted as the hearing officer in A.R.'s case during an administrative proceeding held on February 16, 2011.[6] This hearing was not conducted in public, and neither the Board nor Darouse disseminated information from the hearing to anyone outside of the hearing.[7] Both A.R.'s legal counsel and her mother attended and participated in the hearing, and Darouse informed all of them of the allegations of misconduct, doing so in part by reading the statements of student witnesses.[8] A.R. and her mother were allowed to respond to the allegations on their own and through their lawyers.[9]

At the conclusion of the hearing on February 16, 2011, A.R. was transferred to another school for about three months.[10] A.R. was not expelled.[11] Robinson's Complaint asserts that three days after Darouse rendered his decision, she requested that the Board review the determination and punishment, but Robinson claims that the Board never set a time to review Darouse's findings.[12]

---

[4]  *Id.* at ¶¶ 4, 5.

[5]  *Id.* at ¶ 2.

[6]  *Id.* at ¶ 3.

[7]  *Id.* at ¶ 7.

[8]  *Id.* at ¶¶ 12–14.

[9]  *Id.* at ¶ 13.

[10]  *Id.* at ¶¶ 6-7.

[11]  *Id.* at ¶¶ 9.

[12]  Rec. Doc. 1 at ¶¶ 12-14.

*B. Procedural Background*

Plaintiff filed this suit on February 3, 2012, alleging that Defendants deprived her of her rights under the Fourteenth and Fourth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.[13] Robinson also alleges that the Board violated A.R.'s due process rights protected by Article I § 2 of the Louisiana Constitution, and she raises state-law claims of intentional infliction of emotional distress against Darouse, negligence for the Board's alleged failure to train and supervise employees, and defamation against both Defendants. The Court on February 15, 2013, dismissed Robinson's Fourth Amendment claim.[14]

Defendants filed the pending motion for summary judgment on July 16, 2013, seeking dismissal of all remaining claims.[15] Plaintiff filed a response in opposition to the motion on July 31, 2013.[16] Defendants filed a supplemental brief in support of their motion on August 2, 2013.[17]

## II. Parties' Arguments

*A. Defendants' Arguments in Support of Motion for Summary Judgment*

### 1. Darouse is Immune from Suit.

Defendants contend first that Darouse enjoys qualified immunity from these proceedings because he was exercising his function as a disciplinary hearing officer for the Board.[18] They claim that Robinson cannot prevail on her claims against Darouse because she "cannot make out a

---

[13] *Id.* at ¶¶

[14] Rec. Doc. 19 at p. 19.

[15] Rec. Doc. 32.

[16] Rec. Doc. 36.

[17] Rec. Doc. 40.

[18] Rec. Doc. 32-1 at pp. 2-5 (citing *Wood v. Strickland*, 420 U.S. 308, 326 (1975)).

3

violation of a constitutional right" and because "there is no clearly established right to a particular type of hearing in this case."[19] Also, Defendants argue that to the extent Robinson's claims rest on the sufficiency of the evidence presented at the disciplinary hearing, such a challenge cannot overcome Darouse's immunity.[20]

### 2. Defendants Did Not Deny A.R. Substantive or Procedural Due Process.

Defendants next argue that the undisputed facts establish that they did not deprive A.R. of substantive due process because "[a] student's transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest."[21] Moreover, Defendants argue that they provided A.R. with all procedural due process to which she was entitled, asserting that they provided "notice of the charges [against her], and she was given an opportunity to tell Darouse her side of the story."[22] They conclude that "A.R. and counsel might not agree with the outcome of the proceeding, but the fact remains that A.R. received more due process than she was due by law in light of the fact that . . . A.R. was not in danger of being deprived of her education."[23]

### 3. Robinson Cannot Establish Intentional Infliction of Emotional Distress.

Defendants attack this state-law claim by arguing that Darouse's conduct was not extreme or outrageous, because the "only contact Darouse had with A.R. was during a disciplinary hearing," where he allowed A.R. and her counsel to present evidence related to the disciplinary charges

---

[19] *Id.* at p. 4.

[20] *Id.* at p. 4.

[21] *Id.* at p. 6 (citing *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011)).

[22] *Id.* at p. 9.

[23] *Id.*

against her.[24] Moreover, Defendants argue that Robinson must establish a "pattern of deliberate, repeated harassment over a period of time" in order to prevail on this claim.[25] Defendants also argue that "Plaintiff has produced no evidence, no medical records, and no other information to show that any alleged emotional distress was 'severe' such that she can recover" for this claim.[26] Finally, Defendants contend that Robinson cannot establish that Darouse acted with the desire to inflict severe emotional distress or that he could have known that such distress would result from the disciplinary hearing.[27]

### 4. Robinson's Negligence Cause of Action has Prescribed.

Defendants next argue that Robinson's claim against the Board for its failure to train employees and supervise students has prescribed. Noting that Louisiana sets a one-year limitation on delictual actions, they assert that Robinson filed this matter on February 3, 2012, more than one year after the school field trip during which A.R.'s alleged misconduct occurred.[28]

### 5. Robinson Cannot Establish That Defendants Defamed A.R.

Finally, Defendants argue that Robinson cannot establish the required elements of her defamation claim because none of Darouse's statements were false and defamatory; he instead truthfully told Robinson, A.R., and their lawyers "what others had alleged that A.R. had done on a school bus on January 28, 2011."[29] Additionally, Defendants claim that Darouse's communications

---

[24] *Id.* at p. 10.

[25] *Id.* at p. 11 (citation omitted).

[26] *Id.*

[27] *Id.*

[28] *Id.* at p. 12.

[29] *Id.* at p. 14.

were privileged because they were made in the context of the disciplinary proceeding. Likewise, Defendants argue that Darouse's comments were not published to any third party and that, therefore, neither Darouse nor the Board may be liable. Defendants also argue that Louisiana Revised Statute section 17:439 bars Robinson's defamation claim against Darouse because he made his statements while acting within the scope of his employment as a school official.[30] Moreover, because Darouse made his statements only in the context of the hearing and nowhere else, "[t]here was nothing intentionally harmful about what Darouse did in advising Plaintiff of charges against her daughter, A.R."[31] Defendants conclude by arguing that Robinson has provided no evidence that the statements Darouse made at the hearing caused A.R. any injury.

### B. Plaintiff's Arguments in Opposition

#### 1. Darouse is Not Entitled to Qualified Immunity.

Robinson argues that Darouse cannot be entitled to qualified immunity because a reasonable person in his position "would have known – and should have known – that he was in stark violation of clearly established law."[32] Specifically, Robinson argues that this violation occurred when Darouse "summoned Plaintiff to defend herself at a hearing while refusing to give Plaintiff any indication as to who her accusers were or the nature and scope of their accusations."[33] Moreover, Robinson alleges that the disciplinary hearing constituted a "quasi-criminal process" because Darouse's "finding was phrased in terms of 'guilt,'" meaning that "he should have been aware of the

---

[30] *Id.* (citing *Credit v. Richland Parish Sch. Bd.*, 46-163 (La. App. 2 Cir. 5/23/12); 92 So. 3d 1175).

[31] *Id.* at p. 15.

[32] Rec. Doc. 36 at p. 4.

[33] *Id.*

clear Sixth Amendment implications of such a finding."[34] Accordingly, Robinson concludes that "the off-hand and dismissive manner in which [Darouse] conducted the hearing visited constitutional injury upon Plaintiff with added severity."[35]

### 2. Defendant's Denial of A.R.'s Right to Appeal Darouse's Findings Violated her Due Process Rights.

Robinson next contends that Defendants' violated her due process rights because Defendants did not satisfy the "minimal requirements of the Due Process Clause" that apply in her situation because the "egregious nature of the accusations brought against her, placed her good name, her reputation, her honor and her integrity at stake."[36] Moreover, Robinson argues that her request to appeal Darouse's decision to the Board was denied, which violates her rights under Louisiana Revised Statute section 17:416.[37] Robinson specifically contends that students who are disciplined pursuant to that statute have a right to appeal within five days after a decision is made by the school superintendent or his designee, and she argues that Defendants' "outright refusal" to grant Robinson her right to appeal Darouse's findings constituted a violation of Robinson's rights under the Due Process Clause.[38] Robinson thus concludes that there remain "genuine issues of material fact to be resolved by the fact finder at the trial of this matter."[39]

---

[34] *Id.*

[35] *Id.*

[36] *Id.* at p. 5.

[37] *Id.*

[38] *Id.* at p. 6.

[39] *Id.* at p. 7.

### *3. There Remain Disputed Issues of Material Facts Regarding Robinson's Claim of Intentional Infliction of Emotional Distress.*

Robinson argues that Darouse's accusations against Plaintiff were reprehensible and therefore extreme and outrageous.[40] She likewise "maintains that she suffered and continues to suffer extreme emotional distress" and that "at the very least, [Darouse] should have known that severe emotional distress would be substantially certain to result from the kind of reckless allegations and arbitrary findings that Plaintiff has been subjected to."[41]

### *4. Robinson's Negligence Claim is Not Prescribed Because She Claims it as an Alternative to her Other Claims.*

Robinson argues that her claim of negligence against the Board for its alleged failure to train or supervise school employees "will only arise in the event that this Court affirms defendants' findings of fact."[42] She asserts that the prescriptive period for this particular cause of action will not begin to run "unless and until [the Court] rules against Plaintiff on her principal claim."[43]

### *5. Robinson's Defamation Claim*

Robinson argues that Darouse acted negligently in failing to try to determine "the truth or falsity of the statements that he aggressively cultivated from certain witnesses below the age of majority."[44] She asserts that the statements "caused severe injury to Plaintiff" and that Darouse "through his repeated interrogation of minors outside of the presence of their parents or guardians[],

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.* at p. 9.

[44] *Id.*

8

had no small role in fueling these false accusations and rumors."[45]

Robinson also contends that Darouse's communications were not privileged because he "never subjected his designated chaperones . . . to the kind of intense interrogation that he subjected the alleged student witnesses to."[46] She avers that Darouse investigated the matter at issue with a "selective and biased approach to fact-finding," and she concludes that such tactics "constitutes a reckless disregard for the truth" for which Darouse must be liable.[47]

### C. Defendants' Supplemental Memorandum in Support of Motion for Summary Judgment

Defendants note that Robinson "has produced absolutely no evidence to show that there is a genuine issue of material fact."[48] As to whether Darouse is immune from suit, Defendants assert that Plaintiff "has not cited any factual authority, or any legal authority based on any facts shown, to suggest liability on the part of Darouse."[49] Likewise, Defendants argue that Robinson has not disputed that A.R. received notice of the charges against her and that she was allowed "to tell Darouse her side of the story," with counsel present at the hearing.[50] Finally, Defendants contend that Robinson has submitted no evidence sufficient to establish her state law claims for intentional infliction of emotional distress and defamation, and they claim that Robinson "apparently concedes that [her negligence] claim is prescribed, yet submits no evidence to show any interruption of

---

[45] *Id.*

[46] *Id.* at pp. 10-11.

[47] *Id.* at p. 11.

[48] Rec. Doc. 40 at p. 2.

[49] *Id.* at p. 4.

[50] *Id.* at p. 4.

prescription."[51]

### III. Standard Applied in Motions for Summary Judgment

A court must enter summary judgment when a party seeking it has established that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[52] To determine whether there are no genuine disputes as to material facts, the court considers all of the evidence in the record.[53] However, the court must refrain "from making credibility determinations or weighing the evidence."[54]

The party seeking summary judgment bears the initial burden of identifying evidence that establishes the absence of a genuine issue of material fact.[55] If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy this burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim.[56] The burden then shifts to the nonmoving party, who may defeat the motion by setting forth specific facts showing that a genuine issue exists.[57] To this end, the nonmoving party must produce competent evidence beyond mere assertions in the pleadings.[58]

---

[51] *Id.* at p. 5.

[52] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[53] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

[54] *Id.* at 398-99.

[55] *Celotex*, 477 U.S. at 323.

[56] *See id.* at 322-23, 325.

[57] *See id.* at 324.

[58] *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992) ("The nonmovant cannot satisfy this burden merely by denying the allegations in the opponent's pleadings but can do so by tendering depositions, affidavits, and other competent evidence to buttress its claim.") (citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 1263 (1992)).

While the court must "resolve factual controversies in favor of the nonmoving party," it cannot, "*in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts*."[59]

Finally, the Local Rules of the Eastern District of Louisiana provide that any opposition to a summary judgment motion "must include a separate and concise statement of the material facts which the opponent contends present a genuine issue."[60] If the nonmoving party fails to provide such a statement, "[a]ll material facts in the moving party's statement will be deemed admitted, for the purposes of the motion."[61]

## IV. Law and Analysis

As an initial matter, the Court notes that Plaintiffs' opposition to the motion for summary judgment lacks the "separate and concise statement of the material facts which the opponent contends present a genuine issue" required by Local Rule 56.2. Instead, Robinson proposes her own "Statement of Uncontested Facts."[62] However, none of the statements therein purport to controvert Defendants' statement of facts. Accordingly, the Court must accept as undisputed all of Defendants' assertions as set forth in its statement of undisputed facts.[63]

Defendants contend that the undisputed facts establish their entitlement to judgment as a matter of law because (1) Darouse, as a government official, is immune from suit, (2) Plaintiffs

---

[59] *Little*, 37 F.3d at 1075. (emphasis in original).

[60] LR 56.2.

[61] *Id.*

[62] *See* Rec. Doc. 36-1.

[63] Rec. Doc. 32-2.

cannot establish violations of due process under federal or state law, and (3) Plaintiffs' state-law claims are either unsupported by the undisputed record or prescribed under Louisiana law.

## A. Darouse's Entitlement to Immunity

Plaintiffs accuse Darouse of violating their rights to due process, protected by the Fourteenth Amendment of the United States Constitution and Article I, section 2 of the Louisiana Constitution, in two ways.[64] First, they assert that Darouse violated their rights to procedural due process because Darouse denied them "a meaningful opportunity to be heard." Second, Plaintiffs assert that Darouse violated their substantive due process rights by conducting the February 16, 2011, hearing in an arbitrary, oppressive, and egregious manner.[65] Defendants generally argue that Darouse is immune from suit and that Plaintiffs' due process rights were not violated because Darouse and the Board afforded them sufficient process.

Public officials are presumptively immune from suits by plaintiffs alleging deprivation of constitutional rights, and "the burden is on the plaintiff to prove that a government official is not entitled to qualified immunity."[66] Accordingly, an official will be immune unless the plaintiff establishes both (1) that the defendant has violated a plaintiff's clearly established constitutional right and (2) if so, his conduct was objectively unreasonable.[67] Because Plaintiffs allege violation of two separate constitutional rights, i.e., their right to procedural due process and their right to

---

[64]   The Louisiana Supreme Court has explained that the Louisiana and federal due process clauses are "nearly identical in language," and it has expressly found "the two clauses to be coextensive and to provide the same due process protection." *Louisiana v. Smith*, 614 So. 2d 778, 780 (La. 1993). Accordingly, the analysis as to whether Defendants have violated Plaintiffs' due process rights is the same under either constitution.

[65]   *See* Rec. Doc. 1 at ¶¶16-17, 21-24.

[66]   *Wyatt v. Fletcher*, 718 F.3d 496, 502 (5th Cir. 2013) (citation omitted).

[67]   *Id.* at 502-03.

substantive due process, the Court will separately apply the immunity analysis to each claim.

### 1. Darouse's Immunity from Plaintiffs' Procedural Due Process Claim

Plaintiffs assert that Darouse violated their rights to procedural due process because he denied Plaintiffs "a meaningful opportunity to be heard regarding the false allegations that were brought against A.R. by the St. Tammany Public School System."[68]

The Fourteenth Amendment to the United States Constitution prohibits a state actor from depriving "any person of life, liberty, or property, without due process." As the United States Supreme Court and the Fifth Circuit have made clear, a state that provides public education cannot discipline a student by depriving him of access to that education "absent fundamentally fair procedures to determine whether the misconduct has occurred."[69] The Fifth Circuit has made clear, however, that the mere "transfer to an alternative education program does not deny access to public education and therefore does not violate a Fourteenth Amendment interest."[70]

In *Harris ex rel. Harris*, for example, school officials disciplined an eighth-grader by suspending him and then transferring him to an alternative school.[71] The Fifth Circuit rejected the student's claim that the transfer to another school violated his due process rights, noting the transfer did not deprive him of any protected interest.[72] Here, it is undisputed that while A.R. was subject to suspension for up to 10 days, she ultimately was only transferred to another school. Accordingly,

---

[68] Rec. Doc. 1 at ¶ 17.

[69] *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011) (citing *Goss v. Lopez* 419 U.S. 565, 574 (1975)).

[70] *Id.*

[71] *Id.* at 688-89.

[72] *Id.* at 690.

as in *Harris ex rel. Harris*, Plaintiffs cannot establish that a deprivation of a property interest occurred here. Darouse therefore did not violate Plaintiffs' constitutional rights. Concluding that Plaintiffs were not deprived of a protected interest, the Court need not consider the rest of the immunity analysis.

Plaintiffs argue that A.R. nonetheless was entitled to certain procedural rights because the school's consideration of the allegations against her put her "good name, reputation, honor, or integrity" at stake.[73] Quoting from the United States Supreme Court's decision in *Goss v. Lopez*, they assert that Darouse's determination as to whether A.R. committed the alleged misconduct "immediately collides with the requirements of the Constitution."[74]

In *Goss*, the Supreme Court held that a school suspension of 10 days violated students protected interest in a public education because the school failed to provide a notice or hearing before or after the suspension.[75] The Court noted that while the process due to such students varies from case to case, schools must at a minimum give students notice of the allegations of misconduct and grant them a hearing.[76] Most relevant here, the Court further noted that its holding did *not* require that hearings for short suspensions "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident."[77] Instead, the provision of notice and hearing alone is usually sufficient

---

[73] Rec. Doc. 36 at pp. 4-5 (citing *Goss v. Lopez*, 95 S.Ct. 729, 736 (1975)).

[74] *Id.* at p. 5 (citing *Goss*, 95 S.Ct. at 736).

[75] *Goss*, 95 S.Ct. at 741.

[76] *Id.* at 738.

[77] *Id.* at 740.

14

because, as the Court reasoned,

> requiring effective notice and informal hearing permitting the student to give his version of the events will provide a meaningful hedge against erroneous action. At least the disciplinarian will be alerted to the existence of disputes about facts and arguments about cause and effect. [The disciplinarian] may then determine himself to summon the accuser, permit cross-examination, and allow the student to present his own witnesses. In more difficult cases, he may permit counsel. In any event, his discretion will be more informed and we think the risk of error substantially reduced.[78]

Moreover, in *Harris ex rel. Harris*, discussed above, the Fifth Circuit explained that whether the student actually committed the alleged misconduct was irrelevant to the due-process inquiry.[79] In that case, in addition to determining that the student's transfer in that case did not deprive him of a protected interest, the Fifth Circuit also had to determine whether the school gave the student sufficient process before suspending him pending the school's decision on whether to transfer him. The court noted that "the issue is whether [the student] was adequately informed of the specific charges from which the suspension derived, and whether he was given an opportunity to present his side of the story."[80] In that student's case, the Fifth Circuit found that the school satisfied due-process requirements because it gave the student oral "explanations of the accusations against him and an opportunity to respond."[81]

Here, the Court is mindful of the potential damage that accusations, true or otherwise, can inflict on a child. However, as the Fifth Circuit made clear in *Harris ex rel. Harris*, this Court cannot

---

[78] *Id.* at 741.

[79]  635 F.3d at 691.

[80] *Id.*

[81] *Id.* at 692.

consider whether A.R. actually committed the conduct. Instead, it remains bound by the law to determine only whether Darouse and the Board provided her sufficient notice of the accusations against her and a chance to rebut them at a hearing. Moreover, the undisputed facts establish that Darouse conducted a hearing on February 16, 2011. A.R. attended that hearing, as did her mother and counsel. Darouse explained the accusations against A.R. and gave her, her mother, and counsel an opportunity to respond to them.[82] Accordingly, it is undisputed that Darouse gave A.R. notice and hearing sufficient to satisfy the standard as set forth in *Goss* and *Harris ex rel. Harris*. Accordingly, Darouse's conduct did not violate Plaintiffs' right to procedural due process.

### 2. Darouse's Immunity from Plaintiffs' Substantive Due Process Claim

Plaintiffs also allege that Darouse violated their substantive due process rights by acting "arbitrarily, oppressively, and egregiously" by "never afford[ing] Plaintiff or her minor child, A.R., an opportunity to view any of the statements upon which he purportedly based his ultimate ruling."[83] They essentially argue that the hearing was a sham because Darouse did not give A.R. "any indication as to who her accusers were or the nature and scope of their accusations."[84]

As the Fifth Circuit has explained, "[t]he conceptual essence of 'substantive' due process is the notion that the Due Process Clause . . . bars outright 'certain government actions regardless of the fairness of the procedures used to implement them.'"[85] "The overarching objective of this doctrine is to prevent government officials from 'abusing their power, or employing it as an

---

[82] *See generally*, Rec. Doc. Nos. 32-2 (affidavit of Darouse), 32-3 (notes from February 16, 2011 hearing).

[83] Rec. Doc. 1 at ¶¶ 22, 24.

[84] Rec. Doc. 36 at p. 4.

[85] *Brennan v. Stewart*, 834 F.2d 1248, 1255 (5th Cir. 1988) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

instrument of oppression.'"[86] Thus, courts analyze substantive due process claims "by asking whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."[87] To prevail on a substantive due process claim, as in a procedural due process claim, the plaintiff must establish that she was deprived of a protected interest.[88]

As set forth above, A.R. was not deprived of her right to a public education. However, Plaintiffs allege that Darouse deprived A.R. of her right to be free from "arbitrary and oppressive exercises of government power."[89] Defendants argue that their conduct was fair and appropriate and cannot reasonably be said to be arbitrary.

To the extent that Plaintiffs claim that Darouse acted arbitrarily by refusing to provide a list of A.R.'s accusers and their allegations, the Fifth Circuit rejected a similar argument in *Keough v. Tate County Board of Education*.[90] In *Keough*, a school suspended a student for 10 days and after a hearing, expelled him. The Fifth Circuit rejected the student's claim that due process required the school to provide him a witness list and a summary of their testimony before he was suspended.[91] Likewise, the Fifth Circuit held that the student was not entitled to a witness list or summary of testimony before his expulsion hearing, explaining that "[r]eason takes into account the reality that,

---

[86]   *Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

[87]   *Id.* (citation and internal quotation marks omitted).

[88]   *Id.*

[89]   Rec. Doc. 1 at ¶ 24.

[90]   748 F.2d 1077, 1080 (rejecting plaintiff's contention that "because of the long-term effect of the ten-day suspension, they should have received . . . a witness list and summary of witness' testimony prior to the suspension").

[91]   *Id.* at 1080.

though very serious, the matter we are considering is a routine disciplinary matter with a public school, and is not a sophisticated court trial involving complex fact or legal issues."[92] Here, A.R. faced no more than a 10-day suspension and, in the end, was merely transferred. Therefore, A.R. was not entitled either to a list of the students who accused her or a summary of their statements.

Moreover, Plaintiffs have provided no evidentiary basis for their claim that Darouse did not give them "any indication" as to who her accusers were or what they had alleged. In contrast, Defendants have submitted an affidavit by Darouse, along with what appear to be notes of the February 16, 2011, hearing, that contradict Plaintiffs' claim. In particular, the notes reflect that Darouse told Plaintiffs that "students reported to the school what happened; that there were [sic] inappropriate behavior on the back of the bus."[93] When A.R.'s counsel replied that "this seems like it's a weak foundation," the notes reflect that Darouse "reads student statements."[94] The notes further reflect that Darouse stated "I have statements from everyone on the back of the bus and [A.R.] is the only one that says nothing happened."[95]

The Court acknowledges that Defendants do not identify the source of the notes attached to their motion, specify exactly what the notes purport to be, or explain when the notes were actually compiled or created. However, it is apparent from the content and date of the attachment that the notes are a transcription of what transpired at the hearing on February 16, 2011. Moreover, Plaintiffs have not disputed the authenticity or admissibility of the notes, and when a party fails to object to

---

[92] *Id.* at 1082.

[93] Rec. Doc. 32-3.

[94] *Id.*

[95] *Id.*

the admission of evidence, its admission will be reviewed only for plain error.[96]

Even without considering the notes from the hearing, the Court finds that its conclusion that Defendants gave some indication as to who A.R.'s accusers were and the nature of their allegations against her would be the same. Plaintiffs have failed to provide any evidence to dispute the claim in Darouse's affidavit that A.R. "was given notice of what she was accused of doing, given an opportunity to respond with counsel present and with her mother present."[97] A party asserting that a fact is in dispute must support that assertion by citing materials in the record or by showing that the materials the movant has cited do not establish the absence of a genuine dispute.[98] Plaintiffs have done neither. Accordingly, the undisputed facts before the Court establish that Darouse's conduct was not arbitrary and egregious and therefore does not constitute a deprivation of Plaintiffs' rights to substantive due process.

## B. Plaintiffs' Due Process Claim Related to Denial of a Hearing Before the Board

To the extent that Plaintiffs allege that the Board is liable for constitutional violations committed by Darouse,[99] those claims must fail for the reasons just discussed. Plaintiffs also allege that the Board violated their due process rights by denying Plaintiffs' request for Board review of Darouse's findings and the punishment he imposed.[100] Plaintiffs argue that Louisiana Revised Statute

---

[96] *See Peaches Entm't Corp. v. Entm't Repertoire Assocs.*, 62 F.3d 690, 694 (5th Cir. 1995) (citations omitted).

[97] *See* Rec. Doc. 32-2 at ¶ 16.

[98] Fed. R. Civ. P. 56(c)(1).

[99] *See* Rec. Doc. 1 at ¶¶ 17 (alleging denial of procedural due process through Darouse's conduct), 22-23 (substantive due process through Darouse's conduct), 28 (alleging violation of Louisiana constitution for same reasons).

[100] Rec. Doc. 1. at ¶¶ 13-14, 20.

section 17:416(C)(4) grants them such a right.[101]

Section 17:416(C)(4) grants parents of a pupil who has been subjected to an expulsion hearing under section 17:416(C)(1) the right to seek review by the school board. It is undisputed that A.R. was not expelled. However, that does not necessarily mean that A.R. was not under threat of expulsion pursuant to a hearing under section 17:416(C)(1). Even if the February 16, 2011, hearing was an "expulsion hearing" under section 17:416(C)(1), the Court cannot find any support for Plaintiffs' proposition that the review process provided in section 17:416(C)(4) applies where the student was not actually expelled. On the other hand, the Fourth Circuit of the Louisiana Court of Appeal held in *Bonner v. Lincoln Parish School Board* that a student who faced expulsion at a section 17:416(C)(1) hearing but ultimately was merely suspended had no right to appeal under section 17:416(C)(4).[102]

Accordingly, the Court finds that even if A.R. was threatened with expulsion, she was not entitled to seek Board review of her ultimate punishment because she was only transferred to another school. Therefore, even assuming Plaintiffs could raise a due process claim based upon the Board's alleged violation of section 17:416(C)(4), the undisputed facts establish that as a matter of law the Board did not violate the provision. The Board is entitled to summary judgment as to this claim.

### C. Plaintiffs' Claims Under Louisiana Law

Plaintiffs assert three state law claims against Defendants. First, they accuse Darouse of intentional infliction of emotional distress. Second, they accuse the Board of negligent failure to

---

[101]  Rec. Doc. 36 at pp. 5-6.

[102]  *See* 685 So. 2d 432, 435 (La. App. 2 Cir. 1996) (citing La. Rev. Stat. Ann. § 17:416(A)(3)(c), (C)(4) ("James's suspension was reduced to five days and the previous recommendation for expulsion was dropped. Thus, James did *not* have a right to further appeal the decision to the entire school board.").

train its employees and/or supervise students. Finally, Plaintiffs allege that both Darouse and the Board defamed A.R.

### 1. Plaintiffs' Claim Against Darouse for Intentional Infliction of Emotional Distress

The Louisiana Supreme Court recognized the "the viability in Louisiana of a cause of action for intentional infliction of emotional distress" in *White v. Monsanto.*[103] To establish such a claim, a plaintiff must prove "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."[104]

Moreover, to succeed on an intentional infliction of emotional distress claim, the plaintiff must establish that the defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[105] Mere "insults, indignities, threats, annoyances" will not suffice to impose liability.[106] Meanwhile, the distress suffered must be so severe that "no reasonable person could be expected to endure it."[107] And while the defendant's knowledge that a plaintiff might be particularly susceptible to emotional distress is a factor to be considered, "the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt,

---

[103]  *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

[104]  *Id.*

[105]  *Id.*

[106]  *Id.*

[107]  *Id.* at 1210.

is not enough."[108] Finally, the defendant must have "intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like."[109]

In *White*, for example, the Louisiana Supreme Court rejected a jury's verdict that "a church-going woman in her late forties" suffered intentional infliction of emotional distress when a work supervisor lashed out at her and two co-workers in a profanity-laced tirade that lasted for about one minute.[110] The woman suffered chest pains and was diagnosed as having suffered a panic attack in response.[111] The state Supreme Court nonetheless determined that the supervisor's conduct did not "go beyond all possible bounds of decency," and that it instead was "the kind of unpleasant experience persons must expect to endure from time to time."[112] Likewise, the court held that while the supervisor had intended to cause his employees "some degree of distress," there was no evidence that "his spontaneous, brief, intemperate outburst was intended to cause emotional distress of a severe nature."[113]

Here, it is undisputed that Darouse conducted a disciplinary hearing based upon student allegations, advised A.R. of those allegations, read statements of student witnesses, allowed A.R., her mother and counsel an opportunity to respond, and then determined that A.R. should be transferred to another school for about three months. It cannot be said that Darouse's conduct

---

[108] *Id.*

[109] *Id.*

[110] *Id.* at 1207.

[111] *Id.*

[112] *Id.* at 1210-11.

[113] *Id.* at 1211.

exceeded "all possible bounds of decency." He simply investigated the allegations that others made and provided the accused a chance to respond, as was his job to do.

Confronted with Defendants' argument that none of these actions may legally constitute "extreme and outrageous" behavior, Plaintiffs merely respond that "the conduct of defendant accusing her of such a reprehensible act is extreme and outrageous."[114] Plaintiffs provide no evidence to contradict Defendants' account of the hearing, nor do they offer any evidence to rebut Defendants' claim that "Plaintiff has produced no evidence, no medical records, and no other information to show that any alleged emotional distress was 'severe.'"[115] Accordingly, Defendants have established that there is no genuine issue of material fact and that Darouse is entitled to judgment as a matter of law on Plaintiffs' claim for intentional infliction of emotional distress.

### 2. Plaintiffs' Negligence Cause of Action Against the Board

Defendants contend that Robinson's negligence claim derives solely from the incident of January 28, 2011, and that, therefore, Louisiana law bars Robinson's negligence claim from being raised any time after January 28, 2012. They argue that because Robinson did not file this action until February 3, 2012, her negligence claim is prescribed.

Louisiana Civil Code article 3492 subjects delictual actions, such as Robinson's negligence claim, to a one-year liberative prescription. "[F]or prescription to begin to run under Article 3492, it must be shown that the plaintiff knew or reasonably should have known that he or she has suffered harm due to a tortious act of the defendant, unless one of the *contra non valentem* exceptions applies

---

[114]  Rec. Doc. 36.

[115]  Rec. Doc. 32-1.

to delay further the commencement or to suspend the running of prescription."[116] The jurisprudential principle of *contra non valentem* applies when the plaintiff is not aware of the damage suffered or that the damage suffered is the fault of the defendant.[117] The doctrine also applies in cases of "legal impossibility, existence of a condition coupled with a contract or the proceedings that prevent plaintiff from acting, and presence of an obstacle set up by the defendant."[118]

Robinson's Complaint states that if A.R. in fact committed the misconduct as alleged, "then Plaintiffs asserts that [the Board] failed to adequately train the two teachers who acted as chaperones and monitors for the trip, as they failed to adequately supervise the students."[119] The claim therefore arises solely from the incident that occurred on January 28, 2011. It is undisputed that Robinson filed this action on February 3, 2012. This negligence claim depends entirely on A.R. committing the alleged misconduct, which she necessarily would have to have known about the day she committed it. Accordingly, Plaintiffs' negligence claim against the Board has prescribed pursuant to article 3492, and the Board is entitled to summary judgment on this claim.

### 3. Plaintiffs' Defamation Cause of Action Against Both Defendants

There are four elements to a defamation claim under Louisiana law: "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury."[120] Defendants contend

---

[116] *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992).

[117] *Id.* (citations omitted).

[118] *Id.* (citations omitted).

[119] Rec. Doc. 1 at ¶ 35.

[120] *Kennedy v. Sheriff of East Baton Rouge*, 2005-1418, p. 4 (La. 7/10/06); 935 So. 2d 669, 674.

that Plaintiffs cannot establish any of these elements. They especially challenge the second element, arguing that because Darouse cannot be liable for defamation because his statements at the February 16, 2011, hearing are statutorily privileged.

Louisiana Revised Statute section 17:439 provides that "no person shall have a cause of action against any school employee based on any statement made or action taken by the school employee." For the statute to apply, the statement must have been made "within the course and scope of the school employee's duties as defined by the school board in which the school employee is employed and was within the specific guidelines for school employee behavior as established by that school board."[121] However, the immunity provided by this statute does not apply to statements a school employee makes that were "maliciously, willfully, and deliberately intended . . . to harass or intimidate a student."[122] The Louisiana Supreme Court has accordingly held that a school employee may invoke the protections of section 17:439(A) by establishing (1) the cause of action against the employee is based on a statement made or action taken by the employee, (2) the action or statement was made in the course and scope of the employee's duties as defined by the school board, and (3) the action or statement must be within the specific guidelines for school employee behavior as established by the school board.[123]

Plaintiffs do not dispute that Darouse made the allegedly defamatory statements only at the February 16, 2011, disciplinary hearing. Neither do Plaintiffs dispute that Darouse is a school employee who conducted the hearing within the course and scope of his duties as a Board employee

---

[121]  La. Rev. Stat. § 17:439(A).

[122]  *Id.* at § 17:439(C).

[123]  *Credit v. Richland Parish Sch. Bd.*, 2011-1003, p. 8 (La. 3/13/12); 85 So. 3d 669, 675-76.

or that he made his statement within the specific and relevant Board guidelines. Therefore, Darouse cannot be liable for defamation because he made his statement within the scope of his duties as a disciplinary hearing officer, and he is therefore entitled to judgment as a matter of law.

### V. Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment[124] is **GRANTED** and that all of Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**NEW ORLEANS, LOUISIANA**, this 18th day of October, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[124] Rec. Doc. 32.

26